IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    **Plaintiff(s)**<br><br>        v.<br><br>RAFAEL SABINO-MORALES[3]<br>DANIEL FELICIANO-RODRIGUEZ[6]<br>    **Defendant(s)** | **CRIMINAL NO.** 04-50 |

**OPINION AND ORDER**

**I.   Factual and Procedural Background**

    **A.   The Indictment**

On March 11, 2004, the Grand Jury charged twelve individuals, among them defendants, Rafael Sabino-Morales (hereafter "Sabino") and Daniel Feliciano-Rodriguez (hereafter "Feliciano") with violations to 18 U.S.C. §§ 924(c)(1)(A), 924(o) and 21 U.S.C. §§ 841(a)(1) and (b)(1)A), 846 and 860 (Docket No. 34: Superseding Indictment).[1] The superseding indictment has four counts. Defendants Sabino and Feliciano appear charged in Count One which charges a conspiracy to possess with intent to distribute and the actual distribution of controlled substances "inside or within one thousand (1,000) feet of real property comprising a housing facility owned by a public housing authority." This public housing project

---

[1] The original indictment was issued by the Grand Jury on January 29, 2004 (Docket No. 2).

is named "Nuestra Señora de Covadonga" and is located in Trujillo Alto, Puerto Rico.

Count One describes the objective, names and means through which the conspiracy was carried out. The indictment specifically describes how the co-conspirators arranged for the purchase and sale of the controlled substances (cocaine, crack and heroin); how several residences were used to store, package and conceal the narcotics and drug proceeds; the use of coded language and aliases by co-conspirators; mentions the need to coordinate the collection of the illegal proceeds derived from the sale of drugs; alludes to the use of firearms to protect the narcotics and the drug point; and asserts that the co-conspirators "did cause drugs and drug proceeds to be delivered to various locations in the District of Puerto Rico."

Within the conspiracy count further description is provided of the role of each one of the co-conspirators. Specifically, co-defendants Cristian Villegas (#1), Saúl Flores (#2), Rafael Sabino (#3) and Gabriel Ayala (#4) are described as the leaders, owners and "managers/runners" of the drug trafficking organization. Co-defendant Juan Carlos Rojas (#5) is described as an "enforcer" for the organization. Co-defendant Feliciano (#6) along with the remaining six co-defendants are described as "sellers". (Docket No. 34, p. 6).

The time frame of the conspiracy is defined as the period "from

3

on or about 1998 . . . and continuing up to the date of this indictment" (year 2004) *(id.* at p. 2.)

The indictment specifically charges twenty-three (23) overt acts in which all co-defendants engaged between the period of April 2002 through April 2003 *(id.* at pp. 7-8).

Defendant Sabino is mentioned in overt act number 21 which charges that:

> 18. On or about April 10, 2003, [3] Rafael Sabino-Morales, aka "Cutín," possessed a sum of U.S. currency, proceeds which were derived from the sale of controlled substances, in furtherance of the charged conspiracy.

Co-defendant Feliciano is specifically mentioned in overt acts Nos. 3, 4, and 19 which charges that:

> 3. On or about November 5, 2002, [6] Daniel Feliciano-Rodríguez, aka "Daniel" distributed a controlled substance, in furtherance of the charged conspiracy;
>
> 4. On or about November 10, 2003, [6] Daniel Feliciano-Rodríguez, aka "Danei" distributed a controlled substance, in furtherance of the charged conspiracy;
>
> 16. On or about March 30, 2003, 6] Daniel Feliciano-Rodríguez, aka "Danei" distributed a controlled substance, in furtherance of the charged conspiracy.

Defendant Sabino is also charged in Count II of the indictment which charges a conspiracy to use, carry or possess a firearm in violation of Title 18, U.S.C., Sections 924(c) and 924(o). Co-defendants Villegas (#1), Flores (#2), Ayala (#4) and Rojas (#5) are also charged in Count Two.

4

It is specifically alleged that all named defendants, along with other named but unindicted co-conspirators, did conspire, "on or about 1998...to knowingly, willfully, intentionally and unlawfully possess, use, brandish, or carry firearms,..." in relation or connection to the drug trafficking conspiracy charged in Count One.

**B.  Defendant Feliciano's Allegations**

Defendant Feliciano seeks to dismiss the indictment by invoking the Court's supervisory authority to sanction. The defendant contends that the government's failure to comply with prior discovery orders warrants dismissal as a sanction.  (Docket No. 263).

It is alleged that the government was ordered in three different occasions to provide information "as to the specific amount of drugs for which each defendant is being held accountable". While defendant contends the government has failed to comply, he proffers that on June 2, 2005 A.U.S.A Vernon Miles in compliance with discovery requests responded that "in addition to actual narcotics seized...", the government intends to produce "witnesses who observed the illegal activities of the defendants and were involved in selling narcotics at the drug point."  The government also provided an interview report, dated June 2, 2004, which had been redacted to exclude the informant's name but provided details regarding co-defendant's nicknames, date in which some of them

joined the conspiracy, quantity and type of drugs sold on a shift or week, profit, who possessed weapons and identifying those who provided drug supply for the drug point. Defendant (Docket No. 263, Attachment #1) Feliciano while asserting that in such redacted report he is not mentioned, fails to assert whether from other information received it has been possible to reasonably ascertain any drug quantity for which he may be liable. Notwithstanding, establishing such liability remains the government's burden and this burden the government shall satisfy at trial. Thus far, the Court considers that the government has provided discovery regarding the existence of the conspiracy, its scope, daily operations of the drug point and the fact that defendant Feliciano's role will be more specifically defined at trial.

While defendant Feliciano may not be satisfied for the government's failure to provide the specific drug quantity for which Feliciano may be accountable, it remains a fact that the government's evidence contains videos of drug sales, testimonies of confidential informants and interview reports (DEA-6) from which the daily operations at the drug point are depicted and Feliciano's role and that of other co-defendants similarly situated may be reasonably inferred. Since Feliciano has not placed this Court in a position to examine other discovery provided by the government, this Court may not apply the ultimate and drastic sanction of dismissing, an otherwise valid indictment, absent evidence of prosecutorial

misconduct.

Dismissal of an indictment based on prosecutorial misconduct is an extraordinary remedy. Actually, because of constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment unless for serious and blatant prosecutorial misconduct that negatively affects the judicial process. *See:* United States v. Laboy, 909 F.2d 581 (1st Cir. 1990); United States v. Giorgio, 840 F.2d 1022 (1st Cir., 1988); United States v. Rodriguez, 738 F.2d 13 (1st Cir., 1984).

Accordingly, given the vagueness of defendant Feliciano's assertions and the evidence before this Court, imposition of sanctions is unwarranted and defendant Feliciano's request for dismissal of the indictment is **DENIED**.

### C. Defendant Sabino's Allegations

Sabino appears charged in Counts One (drug distribution conspiracy) and Two (conspiracy to illegally possess weapons in relation to a drug trafficking crime). Sabino incorrectly asserts in his motion that Count Two charges him for the illegal "possession of firearms in relation to a drug trafficking crime" in violation of 18 U.S.C. Sections 924(c)(a)(A) and 924(o). Sabino seeks dismissal of Count Two asserting that after reviewing the evidence the government has provided in discovery, it appears that:

    (a)   there are no videos portraying him carrying weapons;

    (b)   Grand Jury testimony, provided on January 15, 2004, expressly shows he was never armed;

>   (c)   POPR Task Force Agent Anthony Toro-Santana testified at the detention hearing he never saw him (Sabino) carrying a weapon.

In view of these facts, Sabino concludes that "the government sought to charge the defendant with possession of firearms...without probable cause" and thus "[T]his could constitute prosecutorial misconduct". Accordingly, Sabino requests the dismissal of Count II by challenging the evidence before the Grand Jury as insufficient to support probable cause.(Docket No. 250).

The government opposed defendant's request for dismissal of Count Two clarifying that defendant Sabino stands charged "with a conspiracy to possess firearms, which overt acts noted one of the defendants possessed a firearm". In its motion, the government relies on the doctrine that "an indictment returned by a legally constituted and unbiased grand jury...is valid on its face, is enough to call for trial of the charge or the merits" citing Lawn v. United States, 355 U.S. 339 (1958) and Costello v. United States, 350 U.S. 359 (1956). (**Docket No. 256**). The government further draws a distinction between defendant Sabino's specific conduct and his actions as an individual acting in concert with others, while actually being aware of the object of the conspiracy and having knowingly and voluntarily joined the same.

A review of Count Two of the indictment, as correctly argued by the government, reflects that defendant Sabino along with four co-defendants are being charged with a conspiracy to "unlawfully

8

possess, brandish, or carry firearms" in furtherance of a drug trafficking offense.

It is a firmly established principle that "[a]n indictment returned by a legally constituted and unbiased grand jury, … if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). Indeed, an indictment that is valid on its face cannot be challenged on grounds that the grand jury acted on the basis of inadequate or incompetent evidence. United States v. Calandra, 414 U.S. 338, 344-45 (1974) ("[T]he validity of an indictment is not affected by the character of the evidence considered."). These principles have been applied by the First Circuit in prohibiting challenges to a facially valid indictment. See United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989). In Maceo, the First Circuit stated that "[a] court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial." Id. at 3. If such inquiries were allowed, the defendants, the government and the court would be forced to bear two trials.

In this case, Sabino's motion to dismiss presents a challenge to the sufficiency of the evidence considered by the grand jury in returning the indictment, specifically as to Count II. Such a challenge is improper.

Here, there is no allegation that the grand jury was illegally constituted or biased. Additionally, the indictment returned against the defendants is facially valid because Count II particularly tracks the language of 18 U.S.C. § 924 and is sufficient to put defendant on notice as to the charges brought against him.

Defendant Sabino may not challenge the sufficiency of the government's evidence by means of a motion to dismiss. The government bears the burden of establishing the elements of the offense charged. If after the government's case-in-chief, the government fails to satisfy its burden, including the burden of presenting sufficient evidence, defendant Sabino may renew his motion and or resort to other procedural mechanisms to enable proper evaluation of the evidence by the court.

In light of the aforementioned, defendant Daniel Feliciano's Motion to Dismiss the Indictment (Docket No. 250) is hereby **DENIED**, and defendant Rafael Sabino-Morales' Motion to Dismiss Indictment (Docket No. 263) is hereby **DENIED** without prejudice.

**IT IS THEREFORE ORDERED,**

At San Juan, Puerto Rico, on this 2nd day of May, 2005.

 

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY

10

United States District Judge